IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HUGO RAMALLO, | ) | CASE NO. 3:15-CV-2084 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE SARA LIOI |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| MICHELLE MILLER, | ) | JONATHAN D. GREENBERG |
| Warden | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | **(Doc. Nos. 1, 16.)** |

This matter is before the undersigned pursuant to Local Rule 72.2.  Before the Court is the Petition of Hugo Ramallo ("Ramallo" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254.  Ramallo is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case of *State v. Ramallo*, Lucas County Court of Common Pleas Case No. CR 2012-2995.  Also pending before the Court is Ramallo's "Motion to Stay Proceedings," which Respondent opposed.  (Doc. No. 16, 17.)  For the following reasons, the undersigned recommends that (1) Ramallo's motion to stay (Doc. No. 16) be DENIED; and (2) the Petition be DISMISSED.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, factual determinations made by state courts are presumed correct unless rebutted

by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695

F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The

state appellate court summarized the facts underlying Ramallo's conviction as follows:

> {¶ 2} The undisputed facts relevant to the issues raised on appeal are as follows.
> At all times relevant herein, appellant was married to victim T.'s maternal
> grandmother.  T. lived with her mother and older brother, Ty.  The extended
> family enjoyed a close relationship and it was not uncommon for T. and her
> brother to spend time at appellant's home.  In August 2012, after the family spent
> the day at grandmother's cottage in Port Clinton, appellant asked T., then eight
> years old, if she wanted to go out to eat with him.  T. declined and got in her
> mother's car.  T. asked her mother if she wanted to know why T. did not want to
> go anywhere with appellant.  When her mother responded that she did want to
> know, T. said it was because "he puts his pickle here and here," and pointed to
> her vaginal area and her buttocks.  T. told her mother that the last time that
> happened was several days earlier when appellant watched the children after a
> sudden death in the family.  T.'s mother then drove to her brother's house and
> reported the matter to the police.  T. was later examined by a doctor.

*State v. Ramallo*, 2015 WL 2224680 at * 1 (Ohio App. 6th Dist. May 8, 2015).

## II. Procedural History

### A.    Trial Court Proceedings

In November 2012, a Lucas County Grand Jury charged Ramallo with four counts of rape

in violation of Ohio Rev. Code § 2907.02(A)(1)(b) and (B) each with a specification that the

victim was less than ten (10) years of age; and two counts of gross sexual imposition of a person

under the age of thirteen (13) in violation of Ohio Rev. Code § 2907.05(A)(4) and (C).  (Doc.

No. 9-1, Exh. 1.)  Ramallo pled not guilty.  (Doc. No. 9-1, Exh. 2.)  Shortly thereafter, Ramallo

was provided an interpreter for all courtroom proceedings.  *See State v. Ramallo*, 2015 WL

2224680 at * 1.  *See also* Docket for *State v. Ramallo*, Lucas County Court of Common Pleas

Case No. CR 2012-2995, Order dated March 20, 2013.

In May 2013, the State filed a Motion for Competency Determination of the minor victim.  (Doc. No. 9-1, Exh. 3.)  The state trial court conducted a competency hearing with the witness in chambers outside the hearing of the Ramallo on June 6, 2013.  (Doc. No. 9-1, Exh. 4.; Doc. No. 9-2.)  The court determined the minor victim was competent to testify.  (Doc. No. 9-1, Exh. 4; Doc. No. 9-2 at Tr. 15, 22.)

In August 2013, the State provided Ramallo a copy of the Curriculum Vitae of its anticipated expert witness, Dr.  Randall Schlievert.  (Doc. No. 9-1, Exh. 6.)  The following month, Ramallo filed a Motion for Appointment of Expert Witness and Appropriation of Funds, which the trial court granted.  (Doc. Nos. 9-1, Exh. 7, 8.)

Jury trial commenced on January 13, 2014.  Pursuant to Ohio Crim. R. 29, Ramallo made oral motions for acquittal at the close of the State's case and after the defense rested.  (Doc. No. 9-1, Exh. 9.)  The trial court denied both motions.  (*Id*.)

On January 16, 2014, the jury found Ramallo guilty on all six counts.  (Doc. No. 9-1, Exh. 10.)  The trial court conducted a sentencing hearing on January 27, 2014, at which time Ramallo was sentenced to terms of life in prison without parole as to each of the four rape counts (Counts 1 through 4) to be served consecutively; and terms of 54 months in prison as to each of the two GSI counts (Counts 5 and 6) to be served concurrently with each other and concurrently with the sentences on Counts 1 through 4.  (Doc. No. 9-1, Exh. 11.)  The trial court also imposed fines of $25,000 as to each rape count and $15,000 as to each GSI count, for a total fine of $130,000.  (*Id*.)  Additionally, Ramallo was ordered to reimburse the State of Ohio and Lucas County for all applicable costs of supervision, confinement, assigned counsel, and prosecution as authorized by law.  (*Id*.)

3

**B.      Direct Appeal**

On February 13, 2014, Ramallo, through counsel, filed a Notice of Appeal with the Court of Appeals for the Sixth Appellate District ("state appellate court").  (Doc. No. 9-1, Exh. 12.)  In his appellate brief, Ramallo raised the following four assignments of error:

I.      The trial court abused its discretion by improperly precluding appellant from conducting thorough cross examination of a witness thereby denying appellant's right to due process under the Fifth Amendment of the United States Constitution and Article I, Section 10, of the Ohio Constitution.

II.      The trial court committed plain error to the prejudice of appellant at sentencing by imposing financial sanctions without consideration of appellant's present or future ability to pay.

III.      Appellant received ineffective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, § 10 of the Constitution of the State of Ohio.

IV.      The trial court erred in denying appellant's motion for acquittal pursuant to Crim.R. 29.

V.      Appellant's conviction was against the manifest weight of evidence presented by the state and contrary to law.

(Doc. No. 9-1, Exh. 14.)  The State filed a brief in response.  (Doc. No. 9-1, Exh. 15.)

On May 8, 2015, the state appellate court affirmed Ramallo's convictions and prison sentences, but remanded "for a modification of sentence with respect to the amount of the fines assessed and for the vacation of improperly imposed costs of confinement and appointed counsel fees."  *State v. Ramallo*, 2015 WL 2224680 at * 6.  *See also* Doc. No. 9-1, Exh. 16.

On June 12, 2015, Ramallo, *pro se*, filed a Notice of Appeal with the Supreme Court of Ohio.  (Doc. No. 9-1, Exh. 17.)  In his Memorandum in Support of Jurisdiction, Ramallo raised the following Propositions of Law:

4

I.      The Trial Court abused its discretion, and the appellate court did the same, by affirming, when it improperly precluded the Appellant from conducting thorough cross examination of a witness thereby denying Appellant's right to Due Process under the 5th Amendment of the United States Constitution and Article I, Section 10 of the Ohio Constitution.

II.     The Trial Court committed plain error, and the Appellate Court did the same, by affirming, to the prejudice of Appellant at sentencing by imposing financial sanctions without consideration of Appellant's present or future ability to pay.

III.    Appellant received ineffective assistance of counsel in violation of his rights under the 6th and 14th Amendments to the United States Constitution and Article I, Section 10 of the Constitution of the State of Ohio.

IV.     The Trial Court erred, and the Appellate court did the same, in affirming, by denying Appellant's Motion for Acquittal pursuant to Crim. R. 29.

V.      Appellant's conviction was against the manifest weight of the evidence presented by the State and contrary to law.

(Doc. No. 9-1, Exh. 18.)  The State did not file a response.

On September 16, 2015, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct. Prac. R. 7.08(B)(4).  (Doc. No. 9-1, Exh. 19.)

**C.      Application to Reopen Appeal under Ohio App. R. 26(B)**

On July 21, 2015, Ramallo filed a *pro se* Application to Reopen Appeal pursuant to Ohio App. R. 26(B).  (Doc. No. 9-1, Exh. 20.)  According to Respondent, Ramallo's Application raises the following sole argument:

Effective counsel did not prepare for appellant Court procedure in manner of competent Trial Attorney for procedural errors in Trial Court. Error 1.  The entire proceedings gave sufficient context of through examination and witnessed affront the error as legal procedure is non preparation as: 1. All expert witnesses refute the claim of the victim and a competent appellate attorney would argue "Art I Section 10 note 355. Evidence as insufficient and request the weight of discovery of the office of the prosecution with the weigh

5

of the expert witness evidence as each the victim and the experts are of
jurisdiction of the office of the prosecutor." (sic).

(Doc. No. 9-1, Exh. 20.)  The State filed a brief in opposition (Doc. No. 9-1, Exh. 21), to which

Ramallo replied (Doc. No. 9-1, Exh. 22.)  In his Reply Brief, Ramallo identified the following

assignments of error:

I.      Effective Appellate Counsel failure to allow the Court definite records
that give, "No Sexual Intercourse by penetration however slight, no
approaching by touching, no removal of clothes, with Investigative
testimony of Dr. Schuilvert, "No Record of Sex of any Nature Indited."
(sic)

II.     Effective Appellant Counsel failure of Investigative Report:
a. (2)(1) School Physical
b. (2)(2) Yearly Gyneology Report
c. (2)(3) Parent proof of "Penetration however slight." (sic)

III.    Effective Counsel failed to attack verbal truths as to comprehension by
the Court allowing procedure of understanding to be evidence. An error
that is not supported as the procedure for evidence. Evidence is to be
touched in procedural law, allegation is not sustain, when expert denies
the crime. (sic)

IV.    The victim gave testimony to, "Sexual Penetration with movement in
coitus." Effective counsel failed to provide the Appellate Court the
record of the, "State of Ohio effective expert witness," Dr. Schivilert,
"NO SEXUAL VAGINA OR ANAL PENETRATION OR COITUS
MOVEMENT," by expert testimony of the Office of the Prosecuting
Attorney.

V.    The Effective Counsel allowed NO attack as to the reason the Office of
the Prosecution lied to the Court and mislead the Jury in allowing a life
Sentence for times with 56 months concurrent for NO reason other than,
"The Court was not aware the Prosecutor allowed victim to mislead the
Jury" He moved his (pickle) penis in my vagina and anal area." The lack
of procedural Evidence defense proves Effective Counsel gave NO
representation to defend Appellant.  Evidence
Procedure702(A)(B)(C)(D).

VI.    Lack of Expertise when evidence of procedure by Investigative and
Interview are available and not presented are removed when Effective

Counsel; collaborate; "Prosecuting Attorney Procedure".

VII.    Procedural Claim of Evidence by Procedure Evidence Procedure 701 is
        not valid as Evidence Procedure states victim may make claim, the jury
        may not be misled by the claim. Expert witness states, "Victim
        allegation has no provable occurrence."

VIII.   Physical examination records were denied the Jury by misleading
        Statements of victim, "He sexually put pickle in and moved the pickle in
        my vagina and anal hole."

IX.     Expert witness virginal tags and 6 o'clock fold of anus deny, "SEXUAL
        INTERCOURSE!"

(Doc. No. 9-1, Exh. 22.)

On September 18, 2015, the state appellate court denied Ramallo's Application,

explaining as follows:

In his application, appellant states that appellate counsel's performance was
inadequate and compromised his appeal.  In support, appellant asserts that the
five assignments of error set forth on appeal "have no merit nor represent the
appellant in a light of law for argument" and that appellate counsel "gave no
argument."  Essentially, appellant appears to argue that his conviction was
against the weight of the evidence – an issue that counsel presented, and this
court considered, on appeal.

Having carefully reviewed appellant's application in its entirety, we find that his
arguments do not support his claim that he was denied effective assistance of
appellate counsel, and, accordingly, are without merit.

Based on the foregoing, we find that appellant has failed to put forth a colorable
claim of ineffective assistance of appellate counsel.  Accordingly, we find that
appellant has failed to set forth substantive grounds for relief.

(Doc. No. 9-1, Exh. 23.)

On October 23, 2015, Ramallo filed a *pro se* Notice of Appeal to the Supreme Court of

Ohio.  (Doc. No. 9-1, Exh. 24.)  In his Memorandum in Support of Jurisdiction, Ramallo raised

the following assignments of error:

7

I.      Article I section note 13 effective counsel has no responsible argument to remove the evidence against the client known as the appellant.  In the presentation, the effective counsel has not counter evidence or the procedure as the procedure requires certain facts to be proven prior to the claim being accepted in the court for prosecution.

II.     Art I section 10 note 35 Evidence is not sufficient for the court to rule upon other than the expert assumption by the demeanor of the victim that the events the victim spoke of were correct.

(Doc. No. 9-1, Exh. 25.)  The State filed a Waiver of Memorandum in Response.  (Doc. No. 9-1, Exh. 26.)

On December 16, 2015, the Supreme Court of Ohio declined to accept jurisdiction of Ramallo's appeal pursuant to S.Ct. Prac. R. 7.08(B)(4).  (Doc. No. 9-1, Exh. 27.)

**D.      Remand Proceedings in State Trial Court**

On remand from the state appellate court's May 8, 2015 direct appeal decision, the state trial court conducted a resentencing hearing on August 6, 2015.  (Doc. No. 9-1, Exh. 28.)  In a Judgment Entry entered August 20, 2015, the trial court imposed the same prison sentences (terms of life in prison without parole as to each of the four rape counts (Counts 1 through 4) to be served consecutively; and terms of 54 months in prison as to each of the two GSI counts (Counts 5 and 6) to be served concurrently with each other and concurrently with Counts 1 through 4.)  (Doc. No. 9-1, Exh. 28.)  In addition, the trial court again imposed fines of $25,000 as to each rape count and $15,000 as to each GSI count.  (*Id.*)  The trial court did, however, find Ramallo did not "have, nor reasonably may be expected to have, the means to pay the costs of prosecution" and, therefore, waived all costs.  (*Id.*)

On September 4, 2015, Ramallo, through counsel, filed a Notice of Appeal to the state appellate court.  (Doc. No. 9-1, Exh. 29.)  Ramallo's counsel filed a brief and requested leave to

8

withdraw pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

(Doc. No. 20-1, Exhs.  36, 37.)  In his *Anders* brief, counsel raised one potential assignment of

error:

> I.  The trial court violated Appellant's right to due process by denying his
>     right to a qualified interpreter.

(Doc. No. 20-1, Exh. 37.)  Ramallo thereafter filed a *pro se* brief on his own behalf.  (Doc. No.

20-1, Exh. 39.)

On August 26, 2016, the state appellate court determined counsel satisfied the

requirements set forth in *Anders*.  *State v. Ramallo*, 2016 WL 4494504 at * 1 (Ohio App. 6th Dist.

Aug. 26, 2016).  *See also* Doc. No. 20-1, Exh. 40.  The court then affirmed the trial court's

resentencing decision, explaining as follows:

> {¶ 8} Counsel refers to one possible, but ultimately indefensible, issue: (1) the
> trial court violated Appellant's right to Due Process by denying his right to a
> qualified interpreter.
>
> {¶ 9} Specifically, the argument presented in support of this proposed
> assignment is that the interpreter Teo Zuniga, did not speak the Spanish
> language with a "Castilian" dialect.
>
> {¶ 10} The record reflects that the interpreter was sworn by the court reporter
> at the remand hearing.  The appellant's objection was noted.  However, the
> court found that this was the same interpreter that served during the original
> proceedings and there were no objections to the interpreter during the course of
> the trial.  The objection was overruled and the matter proceeded.
>
> {¶ 11} It is well established that a defendant in a criminal case is entitled to
> hear the proceedings in a language he can understand.  *State v. Mota*, 6th Dist.
> Lucas No. L–04–1354, 2006–Ohio–3800.
>
> {¶ 12} Nevertheless, the trial court has the discretion to determine whether the
> defendant requires an interpreter for assistance.  *State v. Saah*, 67 Ohio App.3d
> 86, 95, 585 N.E.2d 999 (1990); *State v. Quinones*, 8th Dist. No. 44463, 1982
> Ohio App. LEXIS 11970 (Oct. 14, 1982).  Accordingly, an appellate court will
> not disturb a decision of the trial court regarding the need for an interpreter

absent an abuse of discretion.  *Id.*  An abuse of discretion is more than an error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 13} Appellant has not demonstrated that the interpreter was not properly qualified to translate or that he lacked veracity.  At no time did appellant express concern that he was not able to understand the interpreter's explanations.  In fact, when the appellant was personally addressed by the trial court and asked specifically if he had anything to say, the appellant responded "No ."

{¶ 14} Based on the record in this case, we cannot find that the trial court abused its discretion in appointing this interpreter and find this proposed assignment of error to be meritless.

{¶ 15} Appellant has filed his own brief.  He argues that he is from Argentina and that the dialect has a "twist" and some words have different sounds and different meanings.  However, he does not articulate how this dialect adversely impacted the August 6, 2015 remand proceedings.  All costs were suspended. To the extent that this argument is an assignment of error, it cannot be found well-taken.

{¶ 16} Appellant also presents additional arguments that claim the trial court did not personally address him at the proceedings and he was not given the opportunity to speak in mitigation.  However, the transcript establishes that he was personally asked whether he had anything to say and that appellant, not the interpreter, answered "No."

{¶ 17} Appellant also presents an argument that the court failed to make proper findings to support the imposition of consecutive sentences.  The August 6, 2016 proceeding was for the limited purpose of addressing appellant's ability to pay the costs assessed in the original sentencing.  Although this issue was not before the trial court on this limited remand, our review of the original sentencing proceedings of January 27, 2014 and judgment entry journalized on February 11, 2014, establish that the court did indeed make these findings as required by R.C. 2929.14(C)(4).  Likewise, to the extent that this argument is an assignment of error, it is also meritless.

* * *

{¶ 18} We have accordingly conducted an independent examination of the record pursuant to *Anders v. California* and have further considered appellant's proposed assignments of error and the arguments presented in appellant's *pro*

10

> *se* brief.  The motion of counsel for appellant requesting to withdraw as
> counsel is granted, and we have determined this appeal to be wholly frivolous.

*Id*. at ** 1-3.  In his most recent filing in this Court, Ramallo states he "will be attempting to

have the Supreme Court of Ohio review his appeal in the hope that they will accept jurisdiction."

(Doc. No. 18 at 1.)  As of the date of this Report & Recommendation, there is no record that

Ramallo has filed a notice of appeal with the Supreme Court of Ohio.

**E.**    **Post-Conviction Filings**

    Meanwhile, on August 12, 2015, Ramallo filed *pro se* pleadings with the state trial court,

captioned "Vacation of Allegations" and "Objection."  (Doc. No. 9-1, Exhs. 31, 32.)  In its

entirety, Ramallo's "Vacation of Allegations" states as follows:

> Defendant files for the use of the Evidence Procedure set by the Courts in,
> "Because the expert's value to the litigation process lies in his or her special
> inferential skills, the expert is not required to have firsthand knowledge of the
> particular set of facts supporting his or her opinion or inference as is require of a
> lay witness under Rules 602 and 701.  581 N.E.2d 604; 524 N.E.2d 881; 602
> N.E.2d 1154.
>
> Conclusion
>
> Judgment Relief form the opinion no Expert in their particular field could file that
> the acts of 2907.02 or 2907.03 had occurred at any given time of the allegations
> as stated.  The one incident was not sufficient to establish a occurrence of the
> events reported.  Vacation by Judgment Relief of the Expert Witness Procedure
> 702, for release from incarceration of allegations of Life without parole four
> counts, and two fifty-four months concurrent sentences.   Vacation by the
> Judgment Relief of Evidence Procedure 702.

(Doc. No. 9-1, Exh. 31.)

    Ramallo's "Objection" states as follows:

> Defendant files for objection to proceedings of allegations of
> 2907.02(A)(1)(b)(4) four counts of life sentence; (2) counts of 2907.03(C)(4) 54
> months concurrent to 54 months; $130,000.00 fine.  Objection is based upon
> total expert witnesses of the State of Ohio in the trial.  No expert can be

11

confirmed by the provisions that allow the Expert Witness to summarize procedure, Equipment, Tools, Instruments, with a definite statement a crime of 2907.02 or 2907.03 was committed.  "Doctor Randall Schilivert" there is no known test to state the allegations occurred.  The Witness cannot state a crime was committed.

Conclusion

Defendant request the court to allow the evidence review for the errors of the Prosecution to proceed on the allegations for the Judgment Relief to be that of the law of Evidence Procedure, Evidence that is affirmed by Expert Witness and not Evidence Procedure 701.  Statements of Laymen Knowledge.

(Doc. No. 9-1, Exh. 32.)  The State filed a response in opposition addressing both of Ramallo's *pro se* motions.  (Doc. No. 9-1, Exh. 33.)

On September 10, 2015, the trial court denied Ramallo's "Vacation of Allegations" and overruled his "Objection," on the following grounds:

Defendant's present filings, as the State argues, raise no new evidence outside the record of his proceeding, and therefore are barred by *res judicata*.  Additionally, Defendant cites to no statutory authority in support of the requested relief.  Therefore, Defendant seeks an entry vacating the judgment against him, which would require this Court to contradict the Sixth District's findings affirming his convictions.  This Court lacks any authority to review the Sixth District's ruling. *See State ex rel. Special Prosecutors v. Judges Court of Common Pleas*, 55 Ohio St.2d 94, 97, 378 N.E.2d 162 (1978) ("trial court loses jurisdiction to take action in a cause after an appeal has been taken and decided").

(Doc. No. 9-1, Exh. 34.)  There is no indication on the state court docket that Ramallo appealed from this decision.

On September 3, 2015, Ramallo filed another *pro se* pleading, captioned "Sentence Contrary."  (Doc. No. 9-1, Exh. 35.)  In this pleading, Ramallo argues as follows:

The Office of the Prosecution falsely allowed the victim to testify of penetration when the Office of the Prosecution had informed the Office of the Prosecution no such penetration is proven by physical exam of the victim.  The Office of the Prosecution Lucas County, Ohio gave false information to the court and the jury that sexual intercourse had occurred between the victim and the defendant.

12

The Office of the Prosecution expert witness, Dr. Schlievert denied victim had intercourse of the vagina or the anal area.  The court and the jury were mislead and lied to by the Office of the Prosecution.  The Doctor Schlievert's examination vitae confirms no sex.

Judgment Relief by the Article I section 10 note 35, Evidence, "Expert Witness not confirming the victim statement as instructed by the evidence procedure 701 and 702 and 2953.08(A)(4) Sentence Contrary to law of the evidence procedure.

(Doc. No. 9-1, Exh. 35.)  As of the date of this Report & Recommendation, the state court docket does not reflect that the trial court has ruled on Ramallo's "Sentence Contrary."

## F.  Federal Habeas Petition

On September 30, 2015,[1] Ramallo filed a Petition for Writ of Habeas Corpus and asserted the following grounds for relief:

**GROUND ONE**:  Allegation of the sentences of the court of law are against the evidence of the Evidence Procedure of the Laws of the State of Ohio that are comity to the laws of the Federal Government.  The allegations are not supported by the State of Ohio Expert Witness and the Expert Witness denies the allegations of the witness known to the Prosecutor before the trial began and the information was not give the court of Common Pleas by the Office of the Prosecution to cause error of evidence to the jury thinking the victim testimony was supported and confirmed to the allegation by the expert witness.  The Expert under oath denied sexual coitus of the vagina and the anal area as the body examination dictated no entrance of any form and the victim testimony was not sufficient to cause an allegation of confirmation.  Art I section 10 note 35.  Evidence and; Evidence Procedure 701 and Evidence Procedure 702.

**Supporting Facts**: The petitioner is innocence of allegations as there is no evidence to support the allegations of sexual conduct of movement in the vagina by penal gland with entrance of the penal gland in the vagina with movement incurring.  The petitioner is innocence of allegations as there is no evidence to

---

[1]  Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities.  *See Houston v. Lack*, 487 U.S. 266 (1988).  While the Petition herein did not arrive at the Court for filing until October 7, 2015, Ramallo states that he placed it in the prison mailing system on September 30, 2015.  (Doc. No. 1 at 11.)  Thus, the Court will consider the Petition as filed on September 30, 2015.

13

support the entrance of the penal gland in the anal area of the rectum with movement of the gland in motion to cause the act of coitus to be sexual in the anal or vagina area.  The office of the prosecution lied to the court of the grand jury; trial court; appellate court and the Ohio Supreme Court with information stating by the victim word the act of sexual conduct and contact had occurred with movement to cause friction and of coitus sex in the anal and vagina area.  The fact is the office of the prosecution to date had no proof other than statements of the victim to cause an investigation but no physical or other evidence to allow a argument before the jury of peers on the victim statements. (sic)

**GROUND TWO**: Art. I section 10 note 13.  Effective Counsel is in violation as of the Sixth Amend. Of the U.S. Const.  The acts of the counsel afford not the proper representation of the court for defense when the proof is not contested that is without doubt defense for the petitioner by the vitae of the State of Ohio, "Expert Witness, Vitiate of Examination," declares and testify the witness is not in truth as to the claim of sexual coitus with movement in the vagina and anus area however slight."  Expert Witness Vitiate of, "Expertise is Correct and its contents reasonable to determine the statements is sound of the innocence of the petitioner."

> **Supporting Facts**: The supporting facts of the claim of innocence are: Curriculum Vitiate of examination of the victim by the Expert Witness of Revised 05/14/13 and Curriculum vitae of Randall Scott Schlievert, M.D.  For the office of the Prosecutor of the Prosecuting Attorney Office Lucas County, Ohio 700 Adams Street, Suite 250, Toledo, Ohio 43604-5659.  Revised 05/14/2014.

(Doc. 1.)

On January 15, 2016, Warden Michelle Miller ("Respondent") filed her Return of Writ.

(Doc. No. 9.)  After receiving an extension of time, Ramallo filed a Traverse on May 6, 2016.[2]

---

[2] Ramallo missed the initial February 15, 2016 deadline for filing his Traverse.  On April 11, 2016, he filed a motion for "delayed extension," in which he asked the Court to allow him to respond to the Traverse despite the fact that the deadline had passed because (1) he cannot speak or read English; (2) his original application was filed by an inmate clerk who had never filed a 2254 habeas petition before; and (3) the inmate clerk gave Ramallo incorrect advice about his response deadline.  (Doc. No. 11.)  Ramallo also argued that "[i]t

14

(Doc. No. 13.)  Therein, Ramallo articulated the following five claims, some of which appear to overlap with one or both of the grounds raised in his Petition and some of which are newly raised:

> I.   The trial court abused its discretion by improperly precluding petitioner from conducting thorough cross examination of a witness thereby denying Petitioner's right to due process under the Fifth Amendment of the United States Constitution and Article I, Section 10 of the Ohio Constitution.
>
> II.  Petitioner received ineffective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, § 10 of the Ohio Constitution.
>
> III. The trial court erred in denying Petitioner's motion for acquittal pursuant to Crim. R. 29 violating Petitioner's United States Constitutional rights to Due Process & Equal Protection of the Laws Applicable to the States throughout the Fourteenth Amendment.
>
> IV.  Petitioner's Conviction was against the manifest weight of the evidence presented by the State and Contrary to Law in violation of his rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, § 10, 16 of the Ohio Constitution.
>
> V.   The trial court abused it's discretion by improperly precluding Petitioner from conducting thorough cross examination of a witness thereby denying Petitioner's right to due process under the Fifth Amendment of the United States Constitution and Art. I, § 10 of the Ohio Constitution.

(Doc. No. 13.)

Respondent filed a Reply to Ramallo's Traverse on May 19, 2016, in which she argued that any claims "first raised in [the] Traverse . . . are not properly raised and the Court should not address them."  (Doc. No. 14.)  Ramallo thereafter responded, asking the Court to "grant him

---

would be in the best interest of this Court to appoint counsel who speaks his native language from Argentina" because "it would be unfair not to allow Mr. Ramallo an opportunity to respond to the State's reply when he is an innocent victim who's [sic] only crime is not understanding English." (*Id*.) On April 18, 2016, the Court denied Ramallo's request for appointment of counsel, but granted him an extension until May 9, 2016 to file his Traverse. (Doc. No. 12.)

leniency and review all claims raised in his Traverse due to the fact that he was relying upon another inmate to fill out his [habeas] application who had never filed such a claim and failed to properly state all grounds that were originally exhausted in the state courts."  (Doc. No. 15.)

Subsequently, on August 11, 2016, Ramallo filed a Motion to Stay Proceedings in this Court in order to exhaust his state court remedies.  (Doc. No. 16.)  Respondent filed a brief in opposition on August 24, 2016, to which Ramallo replied.  (Doc. Nos. 17, 18.)

### III.  Motion to Stay

Ramallo argues this Court should stay the instant habeas proceedings because he "has an appeal from a 'motion to withdraw guilty plea' pending in the [state appellate court] which needs to be exhausted in order to fairly adjudicate the case to this court if needed."  (Doc. No. 16 at 1.)

Respondent opposes the motion.  (Doc. No. 17.)  She argues the alleged "motion to withdraw guilty plea" referenced in Ramallo's motion is "nonexistent" and  "irrelevant" to Ramallo's Petition in light of the fact he was convicted after a jury trial.  Respondent further asserts Ramallo failed to timely appeal from the trial court's denial of his *pro se* post-conviction filings captioned "Vacation of Allegations" and "Objections."  She notes the only pending appeal in this matter is Ramallo's appeal from the trial court's resentencing order, which she asserts is not relevant to the claims raised in the petition because that appeal is limited to the issue of addressing Ramallo's ability to pay the costs assessed in the original sentencing.  Accordingly, Respondent argues Ramallo has not established good cause to stay and hold these proceedings in abeyance.

In response, Ramallo argues that his appeal from the trial court's resentencing order is "more than simply 'a modification of sentence regarding fines. . .' This is a case regarding the

16

constitutional rights of a citizen of the United States who does not speak English, being afforded his right to understand what is being done to him by our Courts."  (Doc. No. 18.)  He further claims that he is "planning to pursue an application to reopen his direct appeal pursuant to Ohio App. Rule 26(B) as soon as he is able to secure a copy of his transcripts."  (*Id.*)

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus.  *See* 28 U.S.C. § 2254(b) and (c); *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted his state remedies.  *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all of the petitioner's claims.  *See Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).  A federal district court may not adjudicate a "mixed petition," i.e., one that contains both exhausted and unexhausted claims.  *Rose v. Lundy*, 455 U.S. 509, 518-19 (1982).  Further, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244, limits the time within which a person in custody pursuant to the judgment of a state court may file a petition for a federal writ of habeas corpus to one year from "the date on which the judgment became final or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1).

In *Rhines v. Weber*, 544 U.S. 269, 275 (2005), the Supreme Court recognized that, "as a result of the interplay between" AEDPA's one-year statute of limitations and the total exhaustion requirement of *Lundy*, "petitioners who come to federal court with 'mixed' petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims.  If a

petitioner files a timely but mixed petition in federal district court, and the district court dismisses it under *Lundy* after the limitations period has expired, this will likely mean the termination of any federal review."  Accordingly, the Court determined that, in the case of a mixed petition, a district court has the discretion to employ a "stay and abeyance" procedure:

> Under this procedure, rather than dismiss the mixed petition. . . a district court might stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims. Once the petitioner exhausts his state remedies, the district court will lift the stay and allow the petitioner to proceed in federal court.

*Id.* at 275-76.

The Court cautioned that "stay and abeyance should be available only in limited circumstances," because it "has the potential to undermine . . . AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings." *Id.* at 277.  Accordingly, the Court determined that stay and abeyance is appropriate only where the petitioner can show: (1) good cause for his failure to exhaust; (2) that his unexhausted claims are not "plainly meritless"; and (3) that there is no indication that the petitioner engaged in "intentionally dilatory litigation tactics."  *Id*. at 277-78; *see also Wagner v. Smith*, 581 F.3d 410, 419 (6th Cir. 2009).  Generally, to show good cause for a failure to exhaust state remedies, a petitioner must show why he failed to use available state remedies timely and appropriately.  *See, e.g., Jalowiec v. Bradshaw*, 657 F.3d 293 (6th Cir. 2011) (finding, in the context of procedural default, that the state's concealment of relevant facts, resulting in a failure to raise a claim within the relevant time period, was relevant to showing good cause for a failure to exhaust); *Hodge v. Haeberlin*, 579 F.3d 627 (6th Cir. 2009) (finding a lack of due diligence in discovering relevant facts was relevant to good cause for a failure to timely exhaust claims).  Further, in *Rhines*, the

18

Supreme Court opined that a stay should be entered if the unexhausted claim was "potentially

meritorious."  544 U.S. at 278.

This Court finds stay and abeyance is not appropriate.  As an initial matter, there is no

indication in the state court docket that Ramallo has a pending appeal relating to a "motion to

withdraw guilty plea."  This is logical since, as Respondent correctly notes, Ramallo pled not

guilty in his underlying criminal case and was thereafter tried and convicted by a jury.  It is

possible Ramallo intended to reference his post-conviction filings captioned  "Vacation of

Allegations" and "Objections."  However, Ramallo failed to timely appeal the trial court's denial

of these filings to the state appellate court, and it does not appear state law would permit him to

file a motion for delayed appeal.  *See State v. Nichols*, 11 Ohio St.3d 40, 43, 463 N.E.2d 375, 378

(Ohio 1984) (holding that "a delayed appeal pursuant to App. R. 5(A) is not available in the

appeal of a post-conviction relief determination ... [and] that post-conviction relief proceedings

will be governed by the Ohio Rules of Appellate Procedure as applicable to civil actions." );

*Wright v. Lazaroff*, 643 F. Supp.2d 971, 987-988 (S.D. Ohio June 25, 2009) (same). [3]

The state court docket does reflect that the state appellate court recently affirmed the trial

court's August 20, 2015 resentencing decision imposing the same prison sentences and fines but

vacating the imposition of costs.  *See State v. Ramallo*, 2016 WL 4494504 at * 1 (Ohio App. 6th

---

[3]  The Court notes that Ramallo's post-conviction filing captioned "Sentence Contrary" is
still pending in the state trial court as of the date of this Report & Recommendation.  The
Court finds, however, that that *pro se* filing does not warrant a stay of the instant habeas
proceedings.  Ramallo's "Sentence Contrary" appears to raise the same issues as that set
forth in his "Vacation of Allegations" and "Objections," both of which were denied on the
basis of *res judicata.*  Moreover, there is no indication that Ramallo's Sentence Contrary is
based on evidence outside the record and, therefore, no reason to believe it would not also
be barred by *res judicata*.

Dist. Aug. 26, 2016).  There is no appeal currently pending from this decision; however, Ramallo does state that he "will be attempting to have the Supreme Court of Ohio review his appeal in the hope that they will accept jurisdiction."  (Doc. No. 18 at 1.)  Even if Ramallo does timely appeal, he has not shown that the state appellate court's August 26, 2016 decision is relevant to any of the claims raised in his habeas petition.  As the state appellate court itself noted, remand to the state trial court was "for the limited purpose of addressing appellant's ability to pay the costs assessed in the original sentencing."  *State v. Ramallo*, 2016 WL 4494504 at * 2.  None of the claims raised in Ramallo's habeas petition relate to the financial sanctions imposed during his sentencing or resentencing.  Nor do any of his habeas claims assert a due process challenge based on the trial court's alleged failure to appoint a "qualified" interpreter, either during his trial or resentencing.  Ramallo cites no authority to support the position that the instant action should be stayed to allow him to exhaust claims that are not raised before this Court.  In fact, this Court has declined to stay habeas proceedings where a petitioner seeks to exhaust claims not expressly raised in the Petition.  *See e.g., Sands v. Bunting*, 3:14cv1960 (N.D. Ohio) (Doc. No. 10);*Vasquez v. Moore*, Case No. 3:13CV2820 (N.D. Ohio) (Doc. No. 10).

Finally, Ramallo's stated intent to pursue another Application to Reopen Appeal pursuant to Ohio App. R. 26(B) does not warrant a stay of the instant proceedings.  Ramallo filed a 26(B) Application in July 2015, which the state appellate court denied and the Ohio Supreme Court declined jurisdiction to consider.  While it is not clear that the Ohio courts would consider a second Rule 26(B) Application, it is moot.  Ramallo does not raise an ineffective assistance of appellate counsel claim in his habeas petition nor has he otherwise argued that such a claim would be of any relevance to his habeas claims.

20

Accordingly, the Court finds Ramallo has failed to establish good cause to stay the instant proceedings and, therefore, recommends that Ramallo's motion to stay (Doc. No. 16) be DENIED.

## IV.  Analysis of the Petition

Ramallo asserts two grounds for relief in his Petition.  The substance of these grounds is difficult to determine.  Respondent construes Ramallo's first ground as challenging the manifest weight and/or the sufficiency of the evidence.  (Doc. No. 9 at 23.)  She construes Ramallo's second ground as asserting ineffective assistance of trial counsel in relation to the State's expert witness, Dr. Randall Schlievert.  (*Id.* at 28.)  Ramallo does not challenge Respondent's interpretation of the grounds for relief as set forth in the Petition.  Therefore, the Court treats Ground One as asserting manifest weight of the evidence and sufficiency claims, and Ground Two as asserting ineffective assistance of trial counsel.

In his Traverse, Ramallo attempts to raise five claims, numbered Grounds One through Five.  But Respondent correctly notes, the Sixth Circuit has held that a district court does not err in declining to address claims first raised in a traverse rather than in the habeas petition.  *See Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005).  *See also Smith v. Bagley*, 2014 WL 1340066 at fn 15 (N.D. Ohio April 13, 2014); *Palmer v. Bagley*, 2005 WL 3965400 (S.D. Ohio, Dec.16, 2005) ("A traverse, however, is not the proper vehicle in which to raise new claims or sub-claims in habeas corpus."); *Burns v. Birkett*, 2007 WL 2318740, *5, n. 2 (E.D. Mich. Aug.9, 2007) ("Because these claims are being presented for the first time in petitioner's traverse or reply brief, rather than in his habeas petition, this Court declines to address these claims, because they are not properly before this Court.").

Nonetheless, and although not required to do so, the Court will consider the grounds raised in Ramallo's *pro se* Traverse for the following reasons.  First, the third and fourth grounds raised in the Traverse assert manifest weight and sufficiency of the evidence claims and are, therefore, duplicative of Ground One in the Petition.  Ramallo exhausted these claims in state court, and Respondent fully addressed them in her Return.  The second ground raised in the Traverse asserts ineffective assistance of trial counsel based on counsel's cross examination of the victim.  (Doc. No. 13 at 16-17.)  This claim was also exhausted in state court, having been raised on direct appeal, addressed on the merits by the state appellate court, and raised on appeal to the Supreme Court of Ohio.  Respondent addressed this particular ineffective assistance claim in her Return and thus will not be prejudiced by this Court's review of that claim.  (Doc. No. 9 at 29-32.)

Finally, the first and fifth grounds raised in the Traverse assert the same claim; i.e, that the trial court abused its discretion when it prevented defense counsel from questioning Ramallo regarding the fact that he did not flee the country when informed of the victim's allegations.  (Doc. No. 13 at 11-15, 21-25.)  The state appellate court considered this claim on the merits and rejected it, and Ramallo thereafter raised this claim on appeal to the Supreme Court.  Although Respondent did not address this claim in her Return, she filed a Reply to Ramallo's Traverse and could have done so there.

In light of Ramallo's *pro se* status, limited English, and repeated statements that he has had difficulty understanding the rules applicable to habeas proceedings, the Court will address each of the claims raised in his Traverse.

**A.      Procedural Issues**

Respondent argues Ground Two as set forth in the Petition is procedurally defaulted.  In this ground, Ramallo appears to argue his trial counsel was ineffective in relation to his handling of the State's expert witness, Dr. Schlievert.  (Doc. No. 1.)  Ramallo does not clearly articulate in what regard trial counsel was ineffective with respect to Dr. Schlievert, stating only that "[t]he acts of the counsel afford not the proper representation of the court for defense when the proof is not contested that is without doubt defense for the petitioner by the vitae of the State of Ohio, 'Expert Witness, Vitiate of Examination,' declares and testify the witness is not in truth as to the claim of sexual coitus with movement in the vagina and anus area however slight."  (*Id.*)

Respondent argues this claim is procedurally defaulted because Ramallo failed to raise it on direct appeal, and his post-conviction filings were denied on the basis of *res judicata*.  (Doc. No. 9 at 29.)  Respondent further argues that, even if Ramallo raised an ineffective assistance of *appellate* counsel claim relating to Dr. Schlievert in his 26(B) Application, this was insufficient to preserve Ramallo's habeas claim for ineffective assistance of *trial* counsel.  (*Id.*)

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)).  A claim may become procedurally defaulted in two ways.  *Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.; see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and

adequate grounds for precluding relief, the claim is procedurally defaulted.[4] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.") This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts.[5] AEDPA's exhaustion requirement only "refers to remedies still available at the time of

---

[4] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp.2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

[5] Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b),( c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990).

the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id.*  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id.*  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law."  *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule."  *Franklin v. Anderson*, 434

F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with

constitutional error." *Id.* Where there is strong evidence of a petitioner's guilt and the evidence

supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United*

*States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v. LeCureux*,

58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice

does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the

trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing

*Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually

innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S. 722,

749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Conclusory statements are not enough—a

petitioner must "support his allegations of constitutional error with new reliable evidence-whether

it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical

evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130

L.Ed.2d 808 (1995). *See also Jones v. Bradshaw*, 489 F. Supp.2d 786, 807 (N.D. Ohio 2007);

*Allen v. Harry*, 2012 WL 3711552 at * 7 (6th Cir. Aug. 29, 2012).

The Court finds the ineffective assistance of trial counsel claim raised in Ground Two of

the Petition is procedurally defaulted. The record reflects that, while Ramallo raised an

ineffective assistance of trial counsel claim on direct appeal, that claim made no mention of any

of the arguments regarding Dr. Schlievert raised in Ground Two of the instant habeas Petition.

Rather, the ineffective assistance claim raised by Ramallo on direct appeal (to both the state

appellate court and the Ohio Supreme Court) was solely concerned with defense counsel's cross-examination of  T. regarding the number of times she allegedly had been sexually abused by Ramallo.  (Doc. No. 9-1, Exhs. 14, 18.)  Thus, Ramallo did not raise the ineffective assistance of trial counsel claim presented in Ground Two of his Petition on direct appeal.

To the extent Ramallo's *pro se* post-conviction "Vacation of Allegations" and "Objection" could be interpreted as raising an ineffective assistance of trial counsel claim relating to Dr. Schlievert, the state trial court denied these filings on the basis of *res judicata,* and Ramallo did not appeal this ruling.[6]  (Doc. No. 9-1, Exhs. 31, 32, 34.)  As such, the Court finds Ramallo failed to comply with an applicable state procedural rule and the state court actually enforced the procedural bar, thus satisfying the first and second prongs of *Maupin*.  Further, as to the third prong of *Maupin*, "the Sixth Circuit has stated that *res judicata* 'is an actually enforced, adequate and independent state ground upon which the Ohio state courts consistently refuse to review the merits of a defendant's claims.'"  *Collins v. Warden, Ross Correctional Inst*., 2014 WL 575727 at * 11 (N.D. Ohio Feb.11, 2014) (quoting *Powers v. Bobby*, 2008 WL 4823134 (N.D. Ohio Nov.3, 2008)).  *See also Coleman v. Mitchell*, 268 F.3d 417, 427 (6th Cir. 2001); *Williams v. Bagley*, 380 F.3d 932, 966–67 (6th Cir.2004); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

Moreover, even if Ramallo's App. R. 26(B) Application is construed as attempting to raise ineffective assistance of appellate counsel based on the failure to raise this ground on direct appeal, that would not preserve Ground Two as set forth in the Petition for federal habeas review. Indeed, it is well-established that "bringing an ineffective assistance claim in state court based on

---

[6]  As noted *supra*, Ramallo may no longer appeal the trial court's denial of these post-conviction filings as Ohio law does not permit delayed appeals in post-conviction proceedings.  *See Nichols*, 11 Ohio St.3d at 43; *Wright*, 643 F. Supp.2d at 987-98.

27

counsel's failure to raise an underlying claim does not preserve the underlying claim for federal habeas review because the two claims are analytically distinct."  *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008).  As another district court within this Circuit has explained:

> [U]nder Ohio law, an application for reopening pursuant to App. R. 26(B), or a "Murnahan" motion, is a procedural mechanism for raising claims of appellate counsel ineffectiveness, not for bootstrapping underlying constitutional claims that were omitted from the direct appeal in the first place.  Fair presentment requires a petitioner to present his claims to the state courts in a procedure and manner that will provide the state courts with the opportunity to apply controlling legal principles.  *Picard v. Connor*, 404 U.S. 270, 276–77, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).  To the extent petitioner is suggesting that raising a claim in a Rule 26(B) application is equivalent to raising that claim on direct appeal, he is in error.  The notion that any constitutional claim raised in an application for reopening is fairly presented to the state courts in the same manner as if that claim had been raised in a timely direct appeal is untenable and unsupported by case law.  The only claims that can be preserved in a Rule 26(B) application for reopening, therefore, are claims of ineffective assistance of appellate counsel.

*Stojetz v. Ishee*, 389 F.Supp.2d 858, 898–99 (S.D. Ohio 2005).  *See also Wogenstahl v. Mitchell*, 668 F.3d 307, 343 (6th Cir. 2012); *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005); *White v. Shewalter*, 2012 WL 2711463 at *10 (N.D.Ohio March 14, 2012).  Thus, Ramallo's App. R. 26(B) Application did not preserve his underlying ineffective assistance of trial counsel claim for habeas review.

In light of the above, the Court finds Ramallo's ineffective assistance of trial counsel claim as raised in Ground Two of his Petition is procedurally defaulted.  Ramallo may nevertheless obtain a merits review of this claim if he can demonstrate cause for the default and prejudice resulting therefrom, or that failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren*, 440 F.3d at 763.  Ramallo makes no argument, either in his Petition or Traverse, regarding any of these issues.  He does not address the issue of procedural

default in his habeas filings, making no clear argument that there exists either cause or prejudice.

Ramallo does claim, generally, that he is innocent of the charges against him.  A petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman*, 501 U.S. at 749–50.  However, conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup*, 513 U.S. at 324.  While Ramallo repeatedly asserts he is innocent, he has failed to support this allegation with any evidence, much less new, reliable evidence that was not presented at trial.  Ramallo's default cannot be excused on this basis.

In light of the above, the Court finds Ground Two as set forth in the Petition is procedurally defaulted.  Moreover, Ramallo has failed to established cause and prejudice to excuse the default and has not come forward with any evidence of "actual innocence."  Accordingly, the Court will not reach the merits of this Ground for Relief.[7]

## B.      Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

An application for a writ of habeas corpus on behalf of a person in custody

---

[7]  While the Court questions the sufficiency and depth of trial counsel's examination of the victim and state's expert witness, these issues were not raised by appellate counsel on direct appeal.  Moreover, Ramallo has not alleged ineffective assistance of appellate counsel as either a stand alone habeas claim or argued that it constitutes cause to excuse the default of this ineffective assistance of trial counsel claim.

29

> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court.  *See Parker v. Matthews*, 132 S. Ct. 2148, 2012 WL 2076341, *6 (U.S. Jun. 11, 2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Shimel v. Warren*, — F.3d ----, 2016 WL 5299883 at * 7 (6ᵗʰ Cir. Sept. 22, 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). Indeed, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court."  *Parker*, 2012 WL 2076341, *6; *Howes v. Walker*, 132 S.Ct. 2741, 2012 WL 508160 (2012).  *See also Lopez v. Smith*, —– U.S. —–, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.' " (quoting *Marshall v. Rodgers*, —– U.S. —–, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013))).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially

30

indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.  *See also Shimel*, — F.3d -----, 2016 WL 5219883 at * 7.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Williams v. Taylor,* 529 U.S. at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA.  *Id.* at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id*. at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal."  *Id*. (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking

in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87. This is a very high standard, which the Supreme Court readily acknowledged. *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

### 1. Manifest Weight and Sufficiency of the Evidence

Ramallo's first ground for relief raised in the Petition (as well as the third and fourth grounds raised in the Traverse) assert his convictions were against the manifest weight of the evidence and/or not supported by sufficient evidence. (Doc. Nos. 1, 13.) Ramallo's principal argument appears to be that his convictions are not supported by the evidence in light of the fact the State's expert witness, Dr. Schlievert, testified there was no physical evidence of rape.

Respondent first argues manifest weight of the evidence claims are not cognizable for federal habeas corpus review. (Doc. No. 9 at 23.) With regard to Ramallo's sufficiency of the evidence claim, she acknowledges this claim is properly exhausted but asserts the state court's rejection of this claim was not contrary to or an unreasonable application of clearly established federal law. (*Id.* at 26-27.)

To the extent the Petition raises a manifest weight of the evidence claim, it is rejected on the grounds that such claims are not cognizable on federal habeas review.[8] *See, e.g., Nash v.*

---

[8] As explained by the U.S. District for the Southern District of Ohio, "under Ohio law, a claim that a verdict was against the manifest weight of the evidence-as opposed to one based upon insufficient evidence-requires the appellate court to act as a 'thirteenth juror' and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Hess v. Eberlin*, 2006 WL 2090093 at *7 (S.D. Ohio 2006), quoting *State v. Martin*, 20 Ohio App.3d 172,175, 485 N.E.2d 717 (Ohio Ct. App.1983). Because a federal district court does "not function as an additional state appellate court, vested with the authority to conduct such an exhaustive

*Eberlin*, 437 F.3d 519, 524 (6th Cir.2006); *accord Howard v. Tibbals*, 2014 WL 201481 at * 16 (N.D. Ohio Jan. 17, 2014); *Hess v. Eberlin*, 2006 WL 2090093 at *6 (S.D. Ohio 2006).

To the extent Ramallo raises a sufficiency of the evidence claim, the Court finds it to be without merit.  The state appellate court considered Ramallo's sufficiency claim on direct appeal and rejected it as follows:

> {¶ 21} In support of his fourth assignment of error, appellant asserts that the trial court erred by denying his motion for acquittal pursuant to Crim.R. 29 because T.'s allegations were unsupported by evidence, they were vague as to time and the number of occurrences, and there were no other witnesses who had first-hand knowledge of the charges.

> {¶ 22} Crim.R. 29(A) requires a trial court to order an acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses."  This court has recognized that the standard of review for a decision regarding a Crim. R. 29 motion for acquittal is the same as that for a decision on a sufficiency challenge, i.e.: "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *State v. Gonzales*, 6th Dist. Wood No. WD–12–037, 2014–Ohio–545, ¶ 35. (Other citations omitted.)

> {¶ 23} The record herein reflects that appellant's convictions of four counts of rape and two counts of gross sexual imposition were based upon sufficient evidence.  The victim testified at length as to the physical acts perpetrated upon her by appellant.

> {¶ 24} R.C.  2907.02(A)(1)(b), rape, prohibits "sexual conduct with another who is not the spouse of the offender" when the victim is "less than 13 years of age," with a special finding that the victim was under the age of ten.  Here, it is undisputed that T. was not the spouse of appellant and was eight years old at the time the offenses were committed.  Further, T.'s testimony as to appellant's actions were more than sufficient to show "sexual conduct" by means of putting his "pickle," as she called his penis, and his tongue into her "front and back private parts" on numerous occasions.

review," this Court cannot consider whether Ramallo's conviction was against the manifest weight of the evidence.  *Id.*

33

{¶ 25} R.C.  2907.05(A)(4), gross sexual imposition, prohibits sexual contact when the victim is less than 13 years of age.  T. testified that appellant touched her "front private" twice with his hands.  "The testimony of a person victimized by sexual misconduct need not be corroborated."  *State v. Robinson,* 6th Dist. Lucas No. L–09–1001, 2010–Ohio–4713, ¶ 100.

{¶ 26} On consideration of the foregoing, we find that, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt.  Accordingly, the trial court did not err by denying appellant's Crim. R. 29 motion for an acquittal, and his fourth assignment of error is not well-taken.

*State v. Ramallo*, 2015 WL 2224680 at * 4-5.

Additionally, in rejecting Ramallo's manifest weight of the evidence challenge, the state appellate court explained as follows:

{¶ 29} The fact that no other witness corroborated the victim's testimony did not render her testimony less credible. It is well-settled that the testimony of a rape victim, if believed, is sufficient to support each element of rape.  *State v. Lewis*, 70 Ohio App.3d 624, 638, 591 N.E.2d 854 (1990).  There is no requirement, statutory or otherwise, that a rape victim's testimony must be corroborated as a condition precedent to conviction.  *State v. Sklenar*, 71 Ohio App.3d 444, 447, 594 N.E.2d 88 (1991).

{¶ 30} The victim in this case, nine years old at the time of trial, was found by the trial court to be competent to testify.  At trial, she testified at length as to the times, beginning when she was seven years old, appellant took her into his house when no one else was there, laid her on the couch, pulled her pants down and "put his private into mine."  She testified that during those times, appellant pulled his pants and underwear down.  T. testified that he put his "private part," or "pickle" into both her private parts and that it felt "uncomfortable" and "weird."  T. did not say anything to appellant during those times because she was afraid and she did not know what to do.  T. further testified that appellant did not just rub "his private" on her but actually "put it inside" and "put his tongue in both of mine, too," more than 30 times over a period of many months.  T. also testified that appellant "has done it like two times with his hands."  She further testified that "a couple times he would do that to me in his pool * * * put his private parts into mine."  Finally, T. testified that appellant told her not to tell anybody and that she did not say anything for a while because she was "scared and embarrassed."

{¶ 31} Appellant testified, denying that he had sexually assaulted T.

34

*Id*. at * 6.

The Due Process Clause of the Fourteenth Amendment requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charged. *In re Winship*, 397 U.S. 358, 363–64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses.  *See id.; Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983).  Moreover, federal courts are required to give deference to factual determinations made in state court and "[a]ny conflicting inferences arising from the record ... should be resolved in favor of the prosecution."  *Heinish v. Tate*, 1993 WL 460782 at *3 (6th Cir. 1993) citing *Walker*, 703 F.3d at 969–70; *Wright v. West*, 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (the deference owed to the trier of fact limits the nature of constitutional sufficiency review.)

Consistent with these principles, the Supreme Court has emphasized that habeas courts must review sufficiency of the evidence claims with "double deference:"

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference.  First, on direct appeal, 'it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.  A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.'  *Cavazos v. Smith*, 565 U.S. 1, ——, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (*per curiam*).  And second, on habeas review, 'a federal court may not overturn a state court

35

decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.' " *Ibid.* (quoting *Renico v. Lett*, 559 U.S. 766, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, —— U.S. ——, ——, 132 S.Ct. 2060, 2062, 182 L.Ed.2d 978 (2012). Under this standard, "we cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt," nor can "[w]e ... inquire whether any rational trier of fact would conclude that petitioner ... is guilty of the offenses with which he is charged." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). Rather, a habeas court must confine its review to determining whether the state court "was unreasonable in its conclusion that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial." *Id.* (emphasis in original) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)).

Upon careful review of the trial transcript, the Court finds the state appellate court reasonably determined Ramallo's convictions for rape and GSI were supported by sufficient evidence. In resolving this claim, the state appellate court accurately summarized the evidence of record and correctly identified the applicable law.[9] As noted in the state appellate court opinion, the minor victim, "T.," testified at length regarding her relationship with Ramallo and the sexual

---

[9] Although the state appellate court did not expressly cite the United States Supreme Court's decision in *Jackson v. Virginia, supra*, it employed an identical standard of review in considering this claim. Ramallo does not argue that, under these circumstances, the state appellate court's failure to specifically cite *Jackson* constitutes error or alters the standard of review in these habeas proceedings. Moreover, even if this Court were to review this claim *de novo*, it would find, for the reasons set forth *infra*, that Ramallo's convictions are supported by sufficient evidence in the record.

abuse that she suffered.  (Tr.  209-256.)[10]  T., who was nine years old at the time of trial, testified Ramallo was married to her grandmother and she considered him "like a grandpa."  (Tr.  209, 210-211.)  She had known Ramallo all her life, spent a lot of time with him, and thought he was nice.  (Tr.  211-213.)  T. testified that, when she was seven or eight years old, Ramallo took her to the back room of his house, laid her on the couch, pulled her pants down, and "put his private parts into [hers.]"  (Tr.  216-218.)  She further explained that, on that occasion, Ramallo "put his private in both her front and back private," i.e., her vagina and anus.  (Tr.  219.)  T. also testified Ramallo put his tongue in both her "front and back private."  (Tr.  220.)  T. stated it was "weird;" she felt uncomfortable and scared; and she did not know what to do.  (Tr.  219-220.)  She then testified that, on two occasions, Ramallo touched her "front private" with his hands.  (Tr.  221.)  T. later identified another specific instance when, after taking her out for ice cream, Ramallo brought her to his house and "put his private parts into mine."  (Tr.  228-229.)  In all, T. estimated Ramallo "put his privates into" hers more than thirty times over a period of many months.  (Tr.  245-246, 247, 254-255.)

T. testified Ramallo told her not to tell anyone.  (Tr.  222.)  She knew what he was doing was wrong, but she did not tell anybody about the abuse for a long time because she felt scared and embarrassed.  (Tr.  230-231.)  Eventually, T. told her cousin and her brother that Ramallo was "touching her in places she didn't like."  (Tr.  183-185, 201-203, 232-233.)  On August 15, 2012, T. told her mother that Ramallo "puts his pickle [i.e., penis]" in her vagina and anus, and stated "it happens all the time."  (Tr.  156-159.)  T.'s mother immediately reported the abuse to the

---

[10]  The trial transcript is located at Doc. Nos. 9-2 and 9-3 and will referred to herein as " Tr. ___."

police.  (Tr. 159-160.)

The State also called Dr. Randall Schlievert, who testified he was the Director of the Child Abuse Program at Mercy Children and Mercy St. Vincent Hospitals.  (Tr. 280.)  The State moved to have Dr. Schlievert recognized as an expert in the treatment and diagnosis of child sex abuse.  (Tr.  293-294.)  Defense counsel did not object, and the Court granted the State's motion.  (*Id.*)  Dr. Schlievert testified he conducted an interview and physical examination of T. in September 2012.  (Tr. 307.)  He stated that, during the interview, T. told him Ramallo had touched her private parts with his private parts and hands.  (Tr. 308-309.)  When talking about this, T. covered her face, turned red, and looked very embarrassed and uncomfortable.  (*Id.*)  T. told Dr. Schlievert that Ramallo touched her in this way "a lot more than one time."  (*Id.*)

Dr. Schlievert testified his physical examination of T. was normal, noting there were "no physical findings."  (Tr. 311.)  He explained, however, that it was "not at all unusual" for there to be no physical signs of abuse and that he "would not have expected to find anything."  (*Id.*)  Dr. Schlievert explained "there is rarely physical evidence of child sexual abuse."  (Tr. 300.)  He testified abusers are often careful not to penetrate deep enough to cause any injury, for fear that pain or bleeding might alert a parent to the abuse.  (Tr. 301-302.)  He also stated there is rarely injury (such tearing or scarring), but that it does happen, on occasion.  (Tr. 302-303.)  Dr. Schlievert testified, however, that injuries to the genital and anal areas "heal really rapidly," explaining studies have determined that "if you don't catch an injury to the private area or anus on a child within 72 hours or a week at the longest you really aren't going to find anything except for a one percent chance of a scar."  (Tr. 303.)  Finally, Dr. Schlievert testified as follows:

> Q:      Doctor, at the conclusion of your examination did you reach any
>           conclusions with a reasonable degree of medical certainty relative to

sexual abuse?

A:    Well, we have an eight year old child who has described repeated abuse by her . . .  grandma's boyfriend– I'm sorry, Sergio.  I heard an interview that was consistent with that that did not cause me to have any other thoughts that either it didn't happen or there was coercion or motive for her to say anything more than what happened.  Her behaviors, personal appearance, matched that, her actions, and her exam matches that.  So, in the end, today I would tell you that it is consistent with what she said, and that she was sexually abused.

(Tr. 313-314.)  Defense counsel cross-examined Dr. Schlievert at length regarding his testimony, focusing particularly on the lack of physical evidence of abuse.  (Tr. 315-335.)

Lastly, Ramallo testified in his own defense, through an interpreter.  (Tr.  355-384.)  Ramallo emphatically stated that he loved T. and would never have hurt her.  (Tr. 372.)  He repeatedly denied sexually abusing T., stating "I never hurt nobody" and "I would cut my hand before I do anything like that."  (Tr. 371-372, 380, 383-384.)  Ramallo testified he was "not the monster that everybody thinks he is."  (Tr. 384.)

The state appellate court reasonably concluded that sufficient evidence supported the jury's findings as to each element of rape and GSI based on the witnesses' testimony.  There was ample evidence T. was under 10 years old at the time of the abuse and, further, that she was not Ramallo's spouse.  (Tr. 149, 163, 209, 217, 235, 242-243, 243-244.)  As discussed above, T. clearly testified Ramallo put his penis and/or tongue into both her vagina and anus over thirty times since she was seven years old.  (Tr. 245-246, 247, 254-255.)  She recalled several specific incidents when this occurred and testified Ramallo penetrated her numerous times during each incident.  (Tr. 214-219, 227-229, 234, 250-255.)  T. also testified there were two occasions when Ramallo touched her "front privates" with his hands.  (Tr. 221.)  It was not unreasonable for the state appellate court to conclude this testimony was sufficient to establish the elements of rape

39

and GSI.

Ramallo argues T.'s testimony is not credible.  He emphasizes Dr. Schlievert's testimony that there was no physical evidence of rape and that T.'s examination was normal.  However, as discussed above, Dr. Schlievert testified at length that it was not unusual for there to be no physical evidence of assault, offering several explanations for why this is the case.  (Tr. 300-303, 311.)  The credibility of witness testimony was outside the scope of the state appellate court's consideration of Ramallo's claim of insufficient evidence.  *Martin v. Mitchell*,  280 F.3d 594, 618 (6ᵗʰ Cir. 2002).  Rather, the state appellate court properly considered all of the evidence in the light most favorable to the State and determined there was sufficient evidence to convict him.  The standard of review applied by the state appellate court coincides with the standard for sufficiency of the evidence set forth in *Jackson*.  Ramallo points to no federal legal precedent requiring the state appellate court, in the context of a challenge to the sufficiency of the evidence, to engage in the evidence-weighing that he requests.  Based on the above and applying the "double deference" required under the AEDPA, the Court is unable to say that the state appellate court's decision "was so unsupportable as to fall below the threshold of bare rationality." *Coleman,* 132 S.Ct. at 2065.

The state court reasonably applied clearly established case law when it considered Ramallo's argument that there was insufficient evidence to support his convictions, and there is no basis for this Court to conclude that the state court decision in this case was contrary to, or involved an unreasonable application of, clearly established federal law.   Accordingly, it is recommended the Court finds that Ramallo's first ground raised in the Petition (and third and

fourth grounds raised in the Traverse) lacks merit.[11]

### 2.    Ineffective Assistance of Trial Counsel (Ground Two of the Traverse)

In the second ground for relief raised in his Traverse, Ramallo argues trial counsel was ineffective when he "elicited testimony during the cross-examination of the alleged victim, T.L., that cast him in a particularly abhorrent light regarding the number of times T.L. claimed she was sexually molested."  (Doc. No. 13 at 16-17.)  Respondent argues the state appellate court considered this claim on direct appeal and reasonably rejected it.  (Doc. No. 9 at 29-32.)

First, to establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Bavers*, 787 F.2d 1022 (6th Cir.1985).  A petitioner also must demonstrate that a trial

---

[11] To the extent Ground One asserts a stand-alone claim of actual innocence, it is also without merit.  The Sixth Circuit has repeatedly held that actual innocence is not cognizable as a free- standing habeas claim, particularly in the context of non-capital proceedings.  *See Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007).  *See also Thomas v. Perry*, 553 Fed. App'x 485, 486 (6th Cir. Jan. 15, 2014) ("Thomas' freestanding claim of actual innocence based on newly discovered evidence is not cognizable on federal habeas review"); *Sitto v. Lafler*, 2008 WL 2224862 at * 1 (6th Cir. May 28, 2008) ("[W]e continue to adhere to the rule that a free-standing innocence claim is not cognizable for habeas review"); *Wright v. Stegall*, 2007 WL 2566047 at * 3 (6th Cir. 2007) ("Since the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside the death-penalty context, this court finds that petitioner's claim is not entitled to relief under available Supreme Court precedent."); *Hoop v. Jackson*, 2015 WL 6735895 at * 22 (S.D. Ohio Nov. 4, 2015) ("Case law in the Sixth Circuit establishes that the Supreme Court of the United States has never recognized a free-standing or substantive actual innocence claim."); *Carter v. Bradshaw*, 2015 WL 5752139 at * 51 (N.D. Ohio Sept. 30, 2015) (Pearson, J.); *Keenan v. Bagley*, 2012 WL 1424751 at fn 28 (N.D. Ohio April 24, 2012) (Katz, J.); *Johnson v. Kelly*, 2015 WL 1298711 at * 11 (N.D. Ohio March 23, 2015) (Zouhary, J., adopting report and recommendation of Baughman, M.J.)

41

counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair.  *Id*.  To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory."  *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy.  *Id.* at 689; *see also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

As explained recently by the United States Supreme Court:

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ——, 129 S.Ct. 1411, 173 L.Ed.2d 251.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ——, 129 S.Ct. 1411, 173 L.Ed.2d 251.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland* 's deferential standard.

*Harrington v. Richter*, —— U.S. ——, ——, 131 S.Ct. 770, 788, 178 L.Ed.2d 624 (U.S.2011);

42

*accord Kennedy v. Warren*, 2011 WL 1642194, *2 (6th Cir. May 3, 2011); *accord Phillips v.

Sheldon,* 2014 WL 185777 at * 14-15 (N.D. Ohio Jan. 16, 2014).

Ramallo asserts trial counsel was ineffective when, during cross-examination, he elicited

testimony from T. that Ramallo had raped her more than thirty times.  Ramallo raised this claim

on direct appeal to both the state appellate court and the Supreme Court of Ohio.  (Doc. No. 9-1,

Exhs. 14, 18.)  The state appellate court rejected this claim as follows:

> {¶ 17} In support of his third assignment of error, appellant asserts that counsel
> elicited testimony during cross-examination of the victim that cast appellant in a
> "particularly abhorrent light" regarding the number of times the victim was
> sexually molested.
>
> {¶ 18} At issue is the following cross-examination of T. by counsel:
>
> > Q. One of the things you testified is that [appellant] and you
> > were alone more than ten times.
> >
> > A. Yes.
> >
> > Q. Was it more than 20 times?
> >
> > A. Yes.
> >
> > Q. What about 30 times, was it more than 30 times?
> >
> > A. Yes.
> >
> > Q. Okay. Okay. So it was at least—was it more than 50 times?
> >
> > A. I don't think so.
> >
> > Q. Okay. But it was at least more than 30 times?
> >
> > A. Yes.
> >
> > Q. And these 30 times he would stick his pickle inside of your
> > private parts?
> >
> > A. Yes.

43

Appellant argues that counsel had no reason to pose such questions to T.

{¶ 19} It is well-established that claims of ineffective assistance of counsel are reviewed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  In order to prove ineffective assistance of counsel, appellant must demonstrate both that counsel's representation fell below an objective standard of reasonableness and that, but for counsel's perceived errors, the outcome would have been different.  *Id*. at 687.

{¶ 20} Applying *Strickland* to the record herein and the example cited by appellant, we are unable to find that counsel's representation fell below a standard of reasonableness or that, but for counsel's perceived error, appellant would not have been convicted.  As to the line of questioning cited by appellant, we note that T. had already testified that penetration occurred on more than 30 occasions, so her testimony was not something the jury had not heard.  It is possible that counsel was attempting to use the testimony at question to cast doubt on T.'s veracity in light of the medical expert's earlier testimony that there were no physical findings of sexual abuse.  Ultimately, counsel's questioning was essentially one facet of his trial strategy and a reviewing court must refrain from second-guessing trial strategy decisions.  *See State v. Jones*, 6th Dist. Lucas No. L–09–1262, 2011–Ohio–2173, at ¶ 51.  Based on the foregoing, appellant's third assignment of error is not well-taken.

*State v. Ramallo*, 2015 WL 2224680 at * 4.

The Court finds the state appellate court's determination that defense counsel's decision to elicit this testimony from T. reflected a strategic judgment and therefore counsel's representation was not ineffective, was neither contrary to nor an unreasonable application of clearly established federal law under the doubly deferential standards of § 2254(d) and *Strickland*.  The United States Supreme Court has emphasized that, in determining whether counsel performed deficiently under *Strickland*, "[w]e begin with the premise that 'under the circumstances, the challenged action[s] might be considered sound trial strategy." *Pinholster*, 131 S.Ct. at 1404 (quoting *Strickland*, 466 U.S. at 689).  Indeed, *Strickland* commands reviewing courts to "affirmatively entertain the range of possible 'reasons [defense] counsel may have had

44

for proceeding as they did,'" *Pinholster*, 131 S.Ct. at 1407, and "indulge [the] strong presumption" that counsel "made all significant decisions in the exercise of reasonable professional judgment." *Strickland,* 466 U.S. at 689-90, 692. *See also McMeans v. Brigano,* 228 F.3d 674, 682 (6th Cir. 2000) ("Strategic choices by counsel, while not necessarily those a federal judge in hindsight might make, do not rise to the level of a Sixth Amendment violation.")

Here, one of the recurring themes of Ramallo's defense was the lack of any physical evidence that T. had been sexually abused. Viewed in this context, it was not unreasonable for the state appellate court to determine that defense counsel made a strategic decision to elicit testimony from T. during cross-examination that she had been abused on multiple occasions. As the state court remarked, defense counsel may have been attempting to cast doubt on T.'s testimony of such frequent abuse given the lack of any physical evidence of penetration.

The Court also finds it was not unreasonable for the state appellate court to determine that Ramallo had failed to establish prejudice under the second prong of *Strickland*; i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. As the state appellate court correctly noted, T. had already testified on direct examination that Ramallo "put his privates in both her front and back privates" more than thirty times. (Tr. 245-246, 247, 254-255.) The state appellate court was not unreasonable in concluding that, but for defense counsel's decision to elicit this testimony again on cross-examination, Ramallo would have been found not guilty of rape.

Accordingly, the Court finds Ramallo's second ground for relief as set forth in the Traverse is without merit.

**3.      Alleged Trial Court Error During Direct Examination of Ramallo**

In the first and fifth grounds for relief raised in the Traverse, Ramallo alleges the trial court violated his due process rights when it prevented defense counsel from questioning Ramallo regarding the fact that he did not flee the country when informed of the victim's allegations.  (Doc. No. 13 at 11-15, 21-25.)  He maintains that "counsel's questions were not designed to offend [Ohio R. Evid.] 611 or the authority of the trial court in governing the presentation of courtroom evidence, counsel was trying to make reference to his claim of actual innocence; however, by improperly restricting counsel's questioning during direct examination, Ramallo was precluded from exercising his constitutional right to due process under the Fifth Amendment of the United States Constitution and Art. 1, § 10 of the Ohio Constitution."  (*Id.* at 25.)

This ground for relief relates to the following exchange during defense counsel's direct examination of Ramallo:

Q:      All right. Now, you're a permanent resident of this country, is that correct?

THE INTERPRETER:        Yes.

Q:      You have legal status to be in this country?

THE INTERPRETER:        Yes.

Q:      But you are from the country of Argentina?

THE INTERPRETER:        Yeah I was born in Argentina.

Q:      You have relatives in Argentina?

THE INTERPRETER:        Yes.

Q:      You could go home to Argentina and have family there?

THE INTERPRETER:        Yes.

Q:     So when did you learn that – when did you learn that there were
       allegations– allegations had been made by T against you?

       THE INTERPRETER:        Okay. Okay. The same day they went to
                               pick up the bikes the brother came back –
                               he was follow him.

       THE DEFENDANT:          I went to the store because Bobbilyn
                               leave, and I went to the store, and when I
                               go to the store for what I need I see the
                               brother.

Q:     That was the same day?

       THE DEFENDANT:          The same day.

       * * *

Q:     And so that was August 15th?

       THE DEFENDANT:          August 15th, correct.

Q:     Is it correct you were indicted on November 29, 2012?

       THE INTERPRETER:        November, yes.

Q:     And you could have left?

THE COURT:        Can I see Counsel at the side bar.

(Whereupon, the following discussion was held at the Bench).

THE COURT:        Mr. Callejas, Mr. Ramallo made his first Court
                  appearance in this Court on December 12, 2010, where
                  his bond was set at a rather high amount.  He has been in
                  custody ever since then.  The argument that you are
                  trying to advance now is not fairly accurate as portrayed,
                  and you are about to open the door to the State being
                  able to Cross Examine your witness as to why he could
                  not leave the country.

MR. CALLEJAS:     Your Honor, I apologize.

47

THE COURT:          It would appear that the question was clearly thought out in advance because it was asked and delivered in a way with the lead up questions to suggest – many questions going at least three or four other questions that would indicate that this is a thought out and planned out area of inquiry.  So an apology is not accepted at this time.  It is understood that this is the direction you are going.  It is clear by the questions you asked ahead of time that you were trying to set this up.  He was from Argentina.  He could go there.  He had family there.  The series of questions leading up are not accidentally wandered into this spot.

MR. CALLEJAS:       Your Honor, I will ask for clarification.  Did you say December 19, 2010?

THE COURT:          No I did not.  It was 2012.  He has been in custody at least since then.   His first appearance was with this Court Reporter and Assistant Prosecuting Attorney Timothy Braun at that time. * * It was continued until the 19th for arraignment with appointment of attorney Pete Rost who was appointed.

MR. CALLEJAS:       Was he not indicted on the date I questioned?

THE COURT:          He may have been indicted on that day.  I don't have that in my records as to the date of the indictment, but I stopped you before you asked the proverbial ringing of the bell that can't be unrung which will allow the State to go into regarding his custody status.  That's the next question.  And you will have to explain it.

MR. CALLEJAS:       Yes, your Honor.

(Tr. 377-380.)

Ramallo raised this claim on direct appeal to both the state appellate court and the

Supreme Court of Ohio.  The state appellate court rejected it as follows:

{¶ 6} In support of his first assignment of error, appellant asserts that when he was under direct examination by defense counsel, the trial court improperly precluded counsel from asking questions related to why appellant did not flee the country when he learned of the allegations against him in this matter.

48

{¶ 7} In relevant part, defense counsel asked appellant whether he had a passport at the time he was indicted.  Appellant responded that he did.  Counsel then asked, "And you could have left?"  Before appellant could respond, the court interrupted and asked counsel to approach the bench.  The court noted that appellant had been in custody since December 12, 2012, when his bond was set at a "rather high amount."  The court continued: "The argument you are trying to advance now is not fairly accurate as portrayed, and you are about to open the door to the State being able to cross-examine your witness as to why he could not leave the country.  * * *  I stopped you before you asked the proverbial ringing of the bell that can't be unrung which will allow the State to go into regarding his custody status."

{¶ 8} Appellant now argues that by restricting counsel's questioning as described above, the court precluded appellant from exercising his constitutional right to due process.

{¶ 9} If counsel's line of questioning had been permitted to continue, the door would have been opened for the state to question appellant as to why he did not leave the country.  The obvious answer to that question, of course, would have been that he was in custody.  The trial court's concern was well-placed and not an abuse of discretion.  Any subsequent reference by the state as to appellant's pre-trial detention status would most likely have led to a demand for a mistrial. The trial court here was essentially exercising its discretion as to the admission or exclusion of evidence and attempting to avoid any possibility of having to declare a mistrial.  Appellant's first assignment of error is not well-taken.

*State v. Ramallo*, 2015 WL 2224680 at * 2.

As a general rule, an error of state law in the admissibility of evidence does not constitute an infringement of a right guaranteed under the United States Constitution, and is not cognizable in habeas corpus.  *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *Byrd v. Collins*, 209 F.3d 486, 528 (6th Cir. 2000).  However, the Sixth Circuit has explained that "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief."  *Bugh*, 329 F.3d at 512.  *See also Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir.2000); *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000).  The Sixth Circuit has cautioned that "courts 'have defined the category of infractions that

49

violate 'fundamental fairness' very narrowly."  *Bugh*, 329 F.3d at 512 (citations omitted).  *See also Dowling v. United States*, 493 U.S. 342, 352–53, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990); *Burger v. Woods*, 2013 WL 613382 at * 2 (6th Cir. Feb. 20, 2013) ("A due process claim premised on a mistaken state court evidentiary ruling faces a steep climb.").  "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."  *Seymour*, 224 F.3d at 552 (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996)).  Moreover, in order to obtain habeas relief in this context, a petitioner must establish "actual prejudice."  *Clemmons v. Sowders*, 34 F.3d 352, 357–58 (6th Cir. 1994).  *See also Brown v. O'Dea*, 227 F.3d 642, 645 (6th Cir.2000); *Burger*, 2013 WL 613382 at * 3 (same).

The Court finds the state appellate court's determination that the trial court did not violate Ramallo's due process rights when it precluded further questioning regarding Ramallo's ability to flee the country, was not unreasonable or contrary to clearly established federal law. Ramallo has not directed this Court's attention to any Supreme Court case finding a federal due process violation under circumstances analogous to the instant case.  Moreover, the Court finds that the trial court's decision to preclude questioning on this issue was not prejudicial or offensive to "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."[12] *Egelhoff*, 518 U.S. at 43.  Indeed, the trial court's intent was, in

_____

[12] The Court notes the tenor of the arguments made at sidebar.  It appears to this Court that defense counsel intended to show that, although Ramallo learned of the allegations in August 2012 and was not indicted until November 2012, he did not flee the country and rejoin his family in Argentina during that time period.  The trial court's apparent concern about this line of questioning seems to have not understood this intent.  Nonetheless, the Court cannot

fact, to prevent defense counsel from pursuing a line of questioning that would open the door to potentially prejudicial questions on cross-examination.  Accordingly, the Court finds the state court's resolution of this claim was not contrary to clearly established federal law and, therefore, Ramallo is not entitled to habeas relief with respect to the first and fourth grounds for relief raised in his Traverse.

### V. Conclusion

For all the reasons set forth above, it is recommended that (1) Ramallo's motion for stay and abeyance (Doc. No. 16) be DENIED; and (2) the Petition be DISMISSED.


Date:   September 26, 2016                 __*s/ Jonathan Greenberg*_____
                                           Jonathan D. Greenberg
                                           United States Magistrate Judge


### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

---

say the trial court's decision to preclude this line of  questioning rises to the level of a due process violation. Moreover, as the sidebar was outside the hearing of the jury, the Court finds Ramallo was not prejudiced by the trial court's remarks.